17-1164-cv
*Nat'l Fuel Gas Supply Corp. v. N.Y. State Dep't of Envtl. Conservation*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of February, two thousand nineteen.

PRESENT:    ROSEMARY S. POOLER,
            RICHARD C. WESLEY,
            PETER W. HALL,
                        *Circuit Judges.*

---------------------------------------------------------------------

NATIONAL FUEL GAS SUPPLY CORPORATION,
  EMPIRE PIPELINE, INC.,

                        *Petitioners,*


            v.                                          No. 17-1164-cv


NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION,
  BASIL SEGGOS, COMMISSIONER, NEW
YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION,
  JOHN FERGUSON, CHIEF PERMIT
ADMINISTRATOR, NEW YORK STATE
DEPARTMENT OF ENVIRONMENTAL
CONSERVATION,

                        *Respondents.*


---------------------------------------------------------------------

FOR PETITIONERS:                    EAMON PAUL JOYCE, Sidley Austin LLP, New York, New York, James R. Wedeking, Tobias Samuel Loss-Eaton, Daniel J. Hay, *on the brief*, Sidley Austin LLP, Washington, D.C.

FOR RESPONDENTS:                    MEREDITH G. LEE-CLARK, Assistant Attorney General of Counsel, Barbara D. Underwood, Solicitor General, Victor Gerard Paladino, Frederick A. Brodie, Assistant Solicitors General, Lisa M. Burianek, Deputy Bureau Chief, *on the brief*, New York State Office of the Attorney General, Albany, New York.

FOR INTERVENOR:                    MONEEN NASMITH, Earthjustice, New York, New York.

Petition for review from the New York State Department of Environmental Conservation.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the New York State Department of Environmental Conservation is **VACATED AND REMANDED**.

Petitioners seek to build and operate a natural gas pipeline in northwestern Pennsylvania and western New York ("Pipeline"). The Federal Energy Regulatory Commission ("FERC") approved the Pipeline by issuing a certificate of public convenience and necessity pursuant to the Natural Gas Act. *See* 15 U.S.C. § 717f. Under Section 401 of the Clean Water Act, 33 U.S.C. § 1341, Petitioners were also required to obtain state water quality certifications from Pennsylvania and New York before beginning construction on the project. The Pennsylvania Department of Environmental Protection granted Petitioners a state water quality certification on February 11, 2018. The New York State Department of Environmental Conservation ("Department") then denied Petitioners a state water quality certification on April 7, 2017 ("Denial Letter"). This appeal followed.

Our review pursuant to the Natural Gas Act proceeds in two steps. First, we "review de

2

novo whether the state agency complied with the requirements of the relevant federal law." *Islander E. Pipeline Co. v. Conn. Dep't of Envtl. Prot.*, 482 F.3d 79, 94 (2d Cir. 2006) ("*Islander East I*"). Second, if we determine that the state has complied with federal law, we "analyze[] the state agency's factual determinations under the more deferential arbitrary-and-capricious standard of review usually accorded state administrative bodies' assessments of state law principles." *Id.* (internal quotation marks omitted).

Petitioners argue that the Department "applied the wrong legal standard by requiring certainty rather than a 'reasonable assurance' of compliance." Petitioner Br. at 35 (quoting 40 C.F.R. § 121.2(a)(3)); *see also* 33 U.S.C. § 1341(a)(3) – (4). In other words, because the Denial Letter states that the Department is required "to certify that a project meets State water quality standards," Sp. App. at 3, the Department demanded "absolute certainty" that the project would comply with State water quality standards, rather than a reasonable assurance that the project would not violate those standards. Petitioner Br. at 35–37. The Department agrees that the "reasonable assurance" standard is applicable. It argues that the Denial Letter applied that standard and that Petitioners "failed to demonstrate that the project would satisfy New York's water quality standards for turbidity." Dep't Br. at 42–43. Because the parties in fact agree on the correct standard to be applied and given that we vacate the Department's decision and remand for further explanation from the Department, we assume without deciding for purposes of the instant appeal that the Department complied "with federal law" and applied the "reasonable assurance" standard. Accordingly, we proceed to step two in the analysis. *Islander East I*, 482 F.3d at 94.[1]

---

[1] Petitioners also assert that the Department impermissibly relied on a "factor[] which Congress

3

"Under the arbitrary-and-capricious standard, judicial review of agency action is necessarily narrow." *Islander East II*, 525 F.3d at 150 (citing *State Farm*, 463 U.S. at 43). The Department was required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (internal quotation marks omitted); *accord Natural Res. Def. Council v. U.S. Envtl. Protection Agency*, 658 F.3d 200, 215 (2d Cir. 2011). To determine whether the Department's action was arbitrary and capricious, we consider whether it: "relied on factors which Congress has not intended it to consider"; "entirely failed to consider" any important aspect of the problem before it; or "offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Islander East II*, 525 F.3d at 150–51 (quoting *State Farm*, 463 U.S. at 43).

Although this is a close case, the Denial Letter here insufficiently explains any rational connection between facts found and choices made. We reach this conclusion mindful of the fact that Article III judges lack the expertise upon which we presume agency determinations rely. Although an expert on riparian disturbance might read the Denial Letter and infer a connection between the facts in the record and the Department's ultimate decision to deny

---

has not intended it to consider," namely political considerations. Petitioner Br. at 23 (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Unlike in *Islander East I*, where there was record evidence that the denial was "a matter of 'strategy' in opposing the pipeline," 482 F.3d at 105, Petitioners' argument that the Department relied on political pressure is not supported by the record. The record here is not so sparse and the denial not so summary as in *Islander East I*, and a petitioner "must point to more than continued political opposition for us to find agency bad faith." *Islander E. Pipeline Co. v. McCarthy*, 525 F.3d 141, 164 (2d Cir. 2008) ("*Islander East II*").

4

the permit, we cannot with a sufficient degree of assurance conclude that was the case. Specifically, there are no record citations in the Denial Letter and there are no citations to specific projects or studies the Department may have considered.

Moreover, the Denial Letter further reflects that, as a basis for its denial, the Department relied on considerations outside of Petitioners' proposal. *See* Sp. App. at 6–7.[2] These considerations include the Department's discussion of permanent culverts, wet crossings, and intake pits, *id.*, which shows either a misunderstanding of the record or possibly that when it was considering the Pipeline the Department relied on determinations made with respect to other pipeline projects. It is clear, moreover, that the Denial Letter mistakenly referenced Petitioners' proposed use of permanent culverts and wet-crossings. *Compare* J. App. at 869 (indicating that Petitioners would not use permanent culverts or wet-crossings)[3] *with* Sp. App.

---

[2] Under *Islander East II*, a state agency may consider "a worst case scenario," but in that case "[s]ubstantial evidence support[ed]" the agency's finding that there was scientific or technological uncertainty that warranted its consideration of a worst case scenario. 525 F.3d at 157. Here, by contrast, the agency appears to have considered a separate application in formulating its decision, or possibly used a boilerplate denial but failed to delete portions that did not relate to the instant application. Sp. App. at 8. This deficiency cannot be cured on appeal by the agency making cursory statements about its own past experiences.

[3] As relevant, Petitioners' proposal states:

> National Fuel does not plan or propose to cross any flowing or inundated streams with a wet trenched/open cut method. However, even with the best laid plans, unforeseen and unplanned challenges can occur, rendering all other crossing methods impracticable. If this should happen at any location during the course of construction, National Fuel would communicate and coordinate with [the Department] on any alternative proposed crossing method (not previously proposed/approved), and would not commence the crossing unless and until [the Department grants] the appropriate review and authorization/approval. . . . National Fuel plans to install equipment crossing structures that minimize in-stream disturbance and footprint/streambed occupancy, and as such will avoid the use of culverts covered with stone in streams.

J. App. at 869.

5

at 6–7 (describing "construction in the wet" and Petitioners' alleged proposed use of "permanent culverts or temporary bridges"). While the Denial Letter does address Pipeline features proposed by Petitioners in the same sentence, *i.e.*, that the Pipeline will cross 35 streams using temporary bridges that the Department concluded will have a negative effect on water quality, or that "construction in dewatered conditions will . . . cause significant damage or destruction to both riparian and in-stream habitat, in turn causing violations of State water quality standards," Sp. App. at 7, from the face of the Denial Letter, we must conclude the Department relied in part on mistakenly identified project features to reach its final determination.

Finally, although the Department was not required to adopt FERC's water quality findings, *see Stewart Park & Reserve Coal., Inc. v. Slater*, 352 F.3d 545, 557–58 (2d Cir. 2003), the Department failed to address evidence in the record that supported those findings. At oral argument, Petitioners asserted that (1) FERC made explicit findings as to the permanency of the water quality effects of the proposed project that the Department failed to consider, and (2) the Department failed to consider evidence in the record that supports FERC's findings. Oral Arg. 3:46; *see also* Sp. App. at 7 ("More broadly, riparian habitat surrounding streams within the [Pipeline Right of Way] will be permanently impacted by construction activities involving excavation and burial of the pipeline . . . ."). The Department should have addressed such evidence in the record in the Denial Letter. *See Islander East I*, 482 F.3d at 88.

Because the Department did not sufficiently articulate the basis for its conclusions, on appeal we cannot evaluate the Department's conclusions and decide whether they are arbitrary and capricious. We are not permitted to provide "a reasoned basis for the agency's action

6

that the agency itself has not given." *State Farm*, 463 U.S. at 43 (internal quotation marks omitted). We express no opinion as to whether there is substantial evidence in the record to support the Department's denial. Accordingly, we do not remand for the record to be supplemented, but instead for the limited purpose of giving the Department an opportunity to explain more clearly —should it choose to do so—the basis for its decision.

Petitioners argue that the Department has already used the time allotted to it to consider Petitioner's application. Petitioner Br. at 19. "[A] failure-to-act claim is one over which the District of Columbia Circuit would have 'exclusive' jurisdiction." *Constitution Pipeline Co. v. N.Y. State Dep't of Envtl. Conservation*, 868 F.3d 87, 100 (2d Cir. 2017) (quoting 15 U.S.C. § 717(r)(d)(2)). Petitioners are free to present any evidence of waiver to FERC in the first instance. *See Millennium Pipeline Co. v. Seggos*, 860 F.3d 696, 700 (D.C. Cir. 2017).

Accordingly, we **VACATE** the decision of the Department and **REMAND** this case with instructions for the Department to more clearly articulate its basis for the denial and how that basis is connected to information in the existing administrative record.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7